IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

TAMMY LYNN GARRISON

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C15-3108

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      A.   *Garrison's Education and Employment Background* . . . . . . . . . . . 3
      B.   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . . . 4
           1.   *Garrison's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
           2.   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . . 4
      C.   *Garrison's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      A.   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . . 10
      B.   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . . 12
           1.   *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . . 12
           2.   *RFC Assessment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V.    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VI.   *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Tammy Lynn Garrison on April 7, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1] Garrison asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Garrison requests the Court to remand this matter for further proceedings.

# II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id*. The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

---

[1] On September 23, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

. . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'"

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. Garrison's Education and Employment Background

Garrison was born in 1961. She completed the ninth grade. While in school, she was enrolled in special education classes. She has no additional schooling or training. In the past, Garrison worked as a book binder and a cleaning person at a hospital.

## B. Administrative Hearing Testimony

### 1. Garrison's Testimony

At the administrative hearing, Garrison testified that she suffers from "stinging" low back pain and shooting left hip pain and right leg pain. Due to her pain issues, Garrison estimated that she could stand at one time for about 10 minutes, and only walk for a "couple" of minutes. While shopping at a store, she uses a motorized scooter to get around. In addition to her back and leg pain, Garrison stated that her ability to walk any type of distance is limited by COPD. Garrison also discussed difficulty with incontinence. She testified she has constant leakage problems throughout the day. Because of her incontinence problem, Garrison stated she does not like to leave her home.

Garrison's attorney asked Garrison to describe her typical day:

> In the morning I wake up, I go to the restroom, have to change, go back to my room. I lay down. My husband turns the TV on. I watch TV with him. He goes in the kitchen, fixes breakfast. I eat breakfast, come back, lay down. Well, I'm laying down to eat breakfast.
>
> I sometimes get bored. I play on the computer. It's a game called Family Farm. So I'm off and on. I turn around and I get bored. So I go in the kitchen, try to do some dishes, and I can't stand there very long because I start to get really bad pressure in my back. So I go back and lay down. And it's like that until I go to bed at night.

(Administrative Record at 45.) Garrison estimated she spends 10 hours lying down in a typical day.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who is:

> able on a sustained basis to engage in light activity with the exception that our hypothetical [individual] should need no more than occasionally to climb ramps or stairs.

4

And should need no more than occasionally to reach with their right dominant arm. Our hypothetical individual should also be in a position that avoids concentrated exposure to unprotected heights or hazardous machinery.

(Administrative Record at 61-62.) The vocational expert testified that under such limitations, Garrison could not perform her past relevant work, but could perform the following jobs: (1) assembler of small products, (2) laundry folder, and (3) shipping and receiving weigher. The ALJ provided the vocational expert with a second hypothetical, adding the following limitations to the first hypothetical:

> our hypothetical individual should have no more than occasional interaction with the general public, coworkers, and supervisors, and should also be in a position that involved no more than occasional need for workplace judgment and no more than occasional changes in the work setting[.]

(Administrative Record at 63.) The vocational expert testified that with the additional limitations, Garrison could still perform the jobs she identified in the first hypothetical.

### C. Garrison's Medical History

On January 30, 2012, Disability Determination Services ("DDS") referred Garrison to Dr. Richard A. Martin, Ph.D., for a "Psychological/Disability Evaluation." Garrison reported depression and anxiety as her mental health problems. Based on their interview, Dr. Martin observed Garrison had a "blunted mood. . . . [S]he appeared to be a person who has limited coping abilities, and limited stress tolerance."[2] Dr. Martin further observed:

> [Garrison] also presented as very invested in having multiple psychiatric and medical concerns, at times appearing to exaggerate her reported symptoms. Her presentation and reported personal history was consistent with diagnoses of

---

[2] Administrative Record at 398.

> chronic adjustment problems, and a possible somatoform disorder.

(Administrative Record at 398.) Upon examination, Dr. Martin opined Garrison's intellectual functioning appeared "limited, likely in the mild [mental retardation] to borderline range (not formally tested)."[3] Garrison showed good attention and concentration within a formal setting, but for intellectual abilities her attention and concentration would be variable. Dr. Martin found Garrison's memory abilities to be intact. Her expressive language and speech were good, but her writing abilities were limited. Dr. Martin also questioned Garrison about her ability to complete daily activities:

> [Garrison] reported that she is able to complete all self-care tasks independently, noting that it depends on her energy level, and that she "skips some days" because "it wears me out." Her grooming appeared generally appropriate on interview. . . . She listed her household (apartment) chores as "dishes laundry trash cat litter vaccum mop bathroom (sic)". However, she claimed that half of these chores do not get completed, citing her back problems.
>
> Ms. Garrison reported that she can make a simple meal, and can use a microwave, stove, and oven independently. She reported that she is not able to drive independently, noting that she "never learned", and that her son drove to the interview. . . . Ms. Garrison denied a history of problems getting along with others.

(Administrative Record at 399-400.) Dr. Martin diagnosed Garrison with adjustment disorder, mixed anxiety/depressed mood, somatoform disorder NOS, and mild mental retardation versus borderline intellectual functioning. Dr. Martin concluded that:

> Ms. Garrison appears to possess the cognitive abilities required to work within a rather narrow range of simple unskilled vocational situations. Her intellectual functioning appeared low, likely in the [mild retardation] to borderline range,

---

[3] Id.

although this was not formally tested. She appears generally capable of understanding simple instructions and procedures. On the surface, her concentration/attention and memory abilities appear adequate for most simplified vocational situations. However, these abilities would likely show a great deal of variability, depending on her overall emotional and physical functioning, particularly within stressful situations. Overall, results of this evaluation indicate that her judgment abilities, particularly within social situations, are limited. Given her presentation, she would likely experience problems interacting with supervisors, co-workers, and the public, who may view her as somewhat unmotivated, dramatic, and unreliable. . . .

Overall, Ms. Garrison appears to meet criteria for a diagnosis of an underlying adjustment disorder, with mixed anxiety and depressed mood. This appears to be a chronic condition. An additional diagnostic consideration appears to be a rather strong likelihood of a longstanding somatoform disorder.

(Administrative Record at 400.)

On February 15, 2012, Garrison met with Dr. Yotin Keonin, M.D., for a comprehensive disability examination. Garrison's chief complaints were low back pain, urinary incontinence, ganglion cyst on the right foot, left forearm tendonitis, and learning problems. Based on record review and Garrison's reports, Dr. Keonin noted that:

her back pain started years ago, and now it is slowly getting worse. She said that she notices occasional radiation of pain down to her legs, but otherwise it does not bother her in terms of loss of sensation or strength. . . . She is not able to lift anything heavier than 5 to 10 pounds. Any activities will bring on the pain. On a scale of 1 to 10, she describes the pain about an 8. . . . X-rays of the lumbosacral spine and both hips were obtained because she claimed that her left hip was also hurting her. But, the x-ray showed mild arthritis in both lumbosacral spine and the hip. This was not severe and did not require any further treatment, other than physical therapy and pain control. She can only walk maybe about 20-30 minutes while shopping, and then pain starts. She has to stop

7

> and sit down. She can stand for about 10 minutes. She can sit
> for about 30 minutes. She can do bending and stooping but
> only occasionally.

(Administrative Record 393.) Upon examination, Dr. Keonin found Garrison could move all four extremities. Her reflexes were "somewhat" diminished in her upper extremities, but normal in her lower extremities. Dr. Keonin found no loss of sensation or weakness in the upper and lower extremities. Dr. Keonin further found "slight" tenderness along Garrison's mid-lumbar spine. Finally, Dr. Keonin found "[s]traight-leg raising test is somewhat positive, but due to pain behind both knees and movement of the hips, it appeared to be slightly limited on the left and right side due to pain."[4] Dr. Keonin provided the following assessment for Garrison: (1) alleged low back pain with occasional radiation to the low extremities; (2) history of stress urinary incontinence, mildly symptomatic; (3) history of asymptomatic ganglion cyst on the right foot; and (4) history of arthritis of the left hip on the x-ray report. Dr. Keonin concluded:

> [The range of motion test] showed light loss of range of
> motion of both hips and shoulders, claiming due to pain
> whenever she performed those functions. But, her station and
> gait are normal. She does not need any assistive devices for
> ambulation. Her grip strength appeared to be unremarkable.
> Her ganglion cyst appeared to be asymptomatic at this
> time. . . .
>
> In my opinion, on this examination, there is little evidence that
> [Garrison] has serious disease, except the allegation. I think
> that she will probably benefit from seeing a back specialist for
> comprehensive evaluation to rule out serious back problems
> physically. As to the pain in the left forearm, there is no
> evidence of physical abnormality on the exam. There is no
> evidence of inflammation of the tendon or muscle. She claims
> it is a little bit sore when it is touched, but otherwise it was
> really not remarkable.

---

[4] Administrative Record at 394.

(Administrative Record at 395.)

On September 19, 2012, Dr. Aroon Suansilppongse, M.D., reviewed Garrison's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Garrison. On the Psychiatric Review Technique assessment, Dr. Suansilppongse diagnosed Garrison with mood disorder. Dr. Suansilppongse determined Garrison had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Suansilppongse found Garrison was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others. Dr. Suansilppongse concluded:

> [Garrison] is able to understand and remember simple instructions. [She] is able to carry out simple instructions. Her anxiety and depressive reaction and alleged pain would interfere with her ability for sustained concentration and persistence or for task completion. However, [she] would be able to complete tasks at an acceptable pace. Her social avoidance and infrequent episodes of irritability would interfere with her ability for appropriate interaction with supervisors, coworkers or the public. However, she would be able to complete tasks with infrequent contact with others.

(Administrative Record at 445.)

On September 20, 2012, Dr. Navjeet Singh, M.D., reviewed Garrison's medical records and provided DDS with a physical RFC assessment for Garrison. Dr. Singh

determined Garrison could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Singh also determined Garrison could frequently climb ramps and stairs, balance, stoop, and kneel, but only occasionally climb ladders, ropes, and scaffolds, crouch, and crawl. Dr. Singh opined Garrison was "very occasionally (on a rare occasion)" limited in reaching on the right. Dr. Singh indicated Garrison should avoid concentrated exposure to hazards, such as heights and moving machinery. Dr. Singh found no visual or communicative limitations.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Garrison was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined Garrison had not engaged in substantial gainful activity since January 31, 2011. At the second step, the ALJ concluded from the medical evidence Garrison has the following severe impairments:

chronic obstructive pulmonary disease, left upper extremity tendonitis, somatoform disorder, adjustment disorder with mixed mood, spinal degenerative joint disease, and right shoulder rotator cuff tear. At the third step, the ALJ found Garrison did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Garrison's RFC as follows:

> [Garrison] has the residual functional capacity to perform light work . . . except that [she] can no more than occasionally climb ramps/stairs and can no more than occasionally reach with the right dominant arm. She should avoid concentrated exposure to unprotected heights, hazards, and machines and can occasionally reach overhead with the right dominant arm; [Garrison] can have no more than occasional interaction with the general public, coworkers, and supervisors with no more than occasional need for work place judgment and no more than occasional changes in the work setting.

(Administrative Record at 14-15.) Also at the fourth step, the ALJ determined Garrison is unable to perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Garrison could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Garrison was not disabled.

## B. Objections Raised By Claimant

Garrison argues the ALJ erred in two respects. First, Garrison argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Second, Garrison argues the ALJ's RFC assessment is flawed because it is not supported by substantial evidence or a fully and fairly developed record.

### 1. Credibility Determination

Garrison argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Specifically, Garrison asserts the ALJ failed to adequately consider the diagnosis of a "strong likelihood of a longstanding somatoform disorder" by

Dr. Martin, a consultative examining psychologist.[5] Garrison contends that her diagnosis of somatoform disorder explains the inconsistency between her subjective claims of pain and the lack of objective evidence to support her claim. Garrison argues "[t]he ALJ's failure to analyze [her] complaints in light of her documented somatoform disorder also incurably taints his credibility finding."[6] Garrison relies on *Benson v. Heckler*, 780 F.2d 16 (8th Cir. 1985) for the proposition that "a claimant's somatoform disorder must be considered when analyzing her allegations of pain under the standard set forth in *Polaski*[.]"[7] Garrison concludes "[l]ike *Benson* . . . the ALJ's pain evaluation and credibility determination simply fails to consider evidence which supports Plaintiff's claim, an error which can only be addressed by remanding the case for further proceedings."[8]

In *Benson*, the claimant sought psychiatric treatment and was diagnosed, among other things, with somatization disorder. 780 F.2d at 17. The Eighth Circuit Court of Appeals determined the ALJ committed several errors mandating reversal:

> First, the ALJ improperly discounted appellant's allegations of pain because of lack of objective evidence of a physical impairment. It is well established that it is error for an ALJ to discount allegations of pain solely because of lack of objective evidence. . . . In this case the ALJ further erred by ignoring uncontradicted medical evidence that appellant's pain is psychological in origin. . . . On remand the ALJ should evaluate appellant's somatization and functional disorders under the revised listing. If disorders are not found to meet the criteria of the listing, the ALJ must then analyze appellant's allegations of pain under *Polaski*.

---

[5] *See* Administrative Record at 400 (Dr. Martin's diagnosis of somatoform disorder).

[6] Garrison's Brief (docket number 15) at 8.

[7] Garrison's Brief (docket number 15) at 9.

[8] *Id.*

*Id.* In *Metz v. Shalala*, 49 F.3d 374 (8th Cir. 1995), the Eighth Circuit addressed the relationship between somatoform disorder and an ALJ's credibility determination. The Eighth Circuit explained:

> Metz attributes the discrepancies between the objective medical evidence and his alleged disabilities to a somatoform disorder, a psychiatric disorder which causes the sufferer to have a distorted perception of physical ailments. In cases involving somatoform disorder, we have stated that an ALJ is not free to reject subjective experiences without an express finding that the claimant's testimony is not credible. . . . Here, the ALJ stated that he found Metz's testimony incredible and explained why. In light of this express determination, we will not reverse the ALJ "simply because some evidence may support the opposite conclusion."

*Id.* at 377 (Quotation omitted).

Here, at step two of the sequential evaluation, the ALJ determined that Garrison's diagnosis of somatoform disorder was a severe impairment.[9] At step three, the ALJ concluded that "[t]he severity of [Garrison's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, 12.06, and 12.07."[10] The ALJ also fully considered and addressed the opinions of Dr. Martin, a consultative examining source, and the only source to diagnose Garrison with somatoform disorder, which was based on Dr. Martin's interview with Garrison and was found to be only a "possible" diagnosis.[11] The ALJ gave Dr. Martin's opinions "some weight in accordance with the brevity of [his] examination of [Garrison] and reliance on

---

[9] *See* Administrative Record at 12.

[10] *Id.* at 13.

[11] *Id.* at 17-18 (providing a thorough review and discussion of Dr. Martin's opinions).

her subjective reports of symptoms, history of treatment, and limitations."[12] Furthermore, unlike *Benson*, the ALJ did not discount Garrison's subjective allegations of pain only because of a lack of objective evidence, as will be discussed in further detail below.[13] Indeed, the ALJ made "an express finding that [Garrison's] testimony is not credible" and explained his reasons for discounting Garrison's subjective allegations under the *Polaski* factors. *See Metz*, 49 F.3d at 377 ("In cases involving somatoform disorder, we have stated that an ALJ is not free to reject subjective experiences without an express finding that the claimant's testimony is not credible. . . . Here, the ALJ stated that he found Metz's testimony incredible and explained why. In light of this express determination, we will not reverse the ALJ 'simply because some evidence may support the opposite conclusion.'"). Accordingly, the Court concludes the ALJ adequately addressed the limited evidence provided in the record regarding somatoform disorder. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."). Failure to cite specific evidence does not indicate that the evidence was not considered by the ALJ. *Id.* (citing *Montgomery v. Chater*, 69 F.3d 273, 275 (8th Cir. 1995)).

Turning to the ALJ's overall credibility determination for Garrison, Social Security law requires that when assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage,

---

[12] *Id.* at 20.

[13] *Id.* at 18-20 (providing a proper credibility determination based on a thorough discussion of Garrison's subjective allegations of pain and disability in accordance with *Polaski*).

effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 ((8th Cir. 2010); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors.'" *Renstrom*, 680 F.3d at 1066; *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective

testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010).

In his decision, the ALJ addressed Garrison's subjective allegations of pain and disability as follows:

> Although [Garrison] has described significant symptoms and daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding [her] disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if [her] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [Garrison's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, [Garrison's] reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.
>
> [Garrison's] allegations of functional loss are not consistent with the file, therefore, her credibility is partially eroded. While the consultative examination does show some mild range of motion abnormalities with decreased grip strength of undetermined significance and somewhat positive straight leg raising, the consultative examiner also noted that on the back and hip pain, that the x-ray showed mild arthritis is both lumbosacral spin and the hip, it was not severe and did not require any further treatment. He likewise observed regarding her foot cyst that it is asymptomatic and that in his opinion there is little evidence that [Garrison] has serious disease, except her subjective allegations. At reconsideration [Garrison] indicates new pain such as shingles, COPD, incontinence, and cyst on right foot. She reports she is only able to shower 1-2 times a week due to pain, unable to brush her hair, etc. While she has undergone some treatment for shoulder impairment, the residual functional capacity has taken this into consideration with corresponding limitations.
>
> During the application process, [Garrison] attributed most of her functional limitations to physical complaints and denied

problems with personal care related to her mental impairments. She is able to go out alone but indicated that she never took the time to learn how to drive. She reported shopping in stores and indicated that she is able to manage money. Socially, she reported getting along well with others including authority figures. She reported some problems with concentration but noted that she can follow written and verbal instructions "good" and "fair" respectively but indicated that she does not handle stress well. While she has medically-determinable impairments of adjustment disorder and somatoform disorder, there is little evidence to support a borderline intellectual functioning/mild mental retardation diagnosis. [Garrison's] statements regarding her functional limitations related to her mental impairments are mostly credible. Activities of daily living reports and medical evidence indicate that [she] can handle some daily responsibilities and is not significantly limited socially. Her attention, concentration, and pace are adequate for tasks not requiring sustained attention. The preponderance of evidence in file indicates that [Garrison] is able to complete simple, repetitive tasks on a sustained basis which appears consistent with her work history. She has received no new or follow up treatment since the psychological consultative examination.

Medical reports show only mild changes in [her] back and while she had pain in her arm, it resolved with treatment. While she has been seen for a cyst in her foot she reported it does not cause any problems. She has a normal walk and good movement in her arms and legs. There is no evidence of urine problems. Reports show she has some problems with anxiety and depression, but is able to think and act in her own best interests and do routine tasks. Considering the evidence in file, [Garrison] has the ability to adjust to other work in the national economy.

[Garrison] has not generally received the amount and type of medical treatment one would expect for a totally disabled individual, considering the relatively infrequent trips to the doctor for the allegedly disabling symptoms and significant gaps in [her] history of treatment.

As noted above, there have been some discrepancies in information reported by [Garrison] to various treating sources when addressing symptom levels, effectiveness of treatment, and capabilities in functioning. While the inconsistent information provided by [Garrison] may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by [Garrison] generally may not be entirely reliable. Therefore, [her] credibility is eroded.

(Administrative Record at 18-20.)

It is clear from his decision, the ALJ thoroughly considered and discussed Garrison's treatment history, the objective medical evidence, her functional restrictions, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining Garrison's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Garrison's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 2. *RFC Assessment*

Garrison argues the ALJ's RFC assessment is flawed. Garrison maintains the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Garrison asserts

the ALJ failed to fully develop the record in making his RFC assessment for Garrison. In particular, Garrison argues the ALJ failed to fully develop the record with regard to her intellectual functioning. Therefore, Garrison concludes this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment

is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In determining Garrison's intellectual functioning to be a non-severe impairment, the ALJ explained:

> [Garrison] has been diagnosed with borderline intellectual functioning, status post shingles, and incontinence, which medical records show have been well-controlled with medication and conservative treatment. These medical conditions cause no limitations in function, and are therefore considered non-severe.

(Administrative Record at 12.) In her brief, Garrison argues "[t]he ALJ's logic is literally nonsensical when considering the nature of borderline intellectual functioning. The ALJ's suggestion that borderline intellectual functioning was not severe because it is "well-controlled with medication and conservative treatment" is confounding."[14] In response, the Commissioner asserts:

> Even if [Garrison's] strained interpretation of the ALJ's statement were plausible, it ignores the following sentence, which states that "these medical conditions cause no limitations in function." [Garrison] provides no medical evidence of a deficit in functioning, and instead relies entirely on consultative examiner Richard Martin, M.D.'s [(*sic*)] diagnosis of rule out mild mental retardation and borderline intellectual functioning. Dr. Martin also found that she was capable of understanding simple instructions and procedures, all that would be needed to complete the jobs the vocational expert identified. Also routine mental status examinations show that she had intact judgment and insight (Tr. 476, 482 490, 499) and do not list any intellectual deficits (Tr. 463, 475, 489, 498): In sum, the ALJ adequately developed the record.

Commissioner's Brief (docket number 17) at 13-14. The Court agrees with the Commissioner, and finds there is no evidence in the record, and Garrison put forth no

---

[14] Garrison's Brief (docket number 15) at 12.

evidence to support a finding of severe limitations for Garrison based on intellectual ability. *See Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (providing if the impairment would only have a minimal effect on a claimant's ability to work, then it would not constitute a severe impairment).

Turning to the ALJ's overall RFC assessment, in his decision, the ALJ thoroughly addressed and considered Garrison's medical history and treatment for her physical and mental health complaints.[15] The ALJ also properly considered and thoroughly discussed Garrison's subjective allegations of pain and disability in making his overall disability determination, including determining Garrison's RFC.[16] Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Garrison's medical records, observations of treating and non-treating physicians, and Garrison's own description of her limitations in making the ALJ's RFC assessment for Garrison.[17] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes Garrison's assertion that the ALJ's RFC assessment is flawed is without merit.

---

[15] *See* Administrative Record at 15-21 (providing a thorough discussion of Garrison's overall medical history and treatment).

[16] *See* Administrative Record at 18-20 (providing a thorough discussion of Garrison's subjective allegations of pain and disability).

[17] *Id.* at 12-21 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

### *V. CONCLUSION*

The Court finds the ALJ properly determined Garrison's credibility with regard to her subjective complaints of pain and disability. Furthermore, the Court finds the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines the ALJ's decision is supported by substantial evidence and shall be affirmed.

### *VI. ORDER*

1.   The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.   Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and

3.   The Clerk of Court is directed to enter judgment accordingly.

DATED this 26th day of _____January_____, 2016.

                              _____
                              JON STUART SCOLES
                              CHIEF MAGISTRATE JUDGE
                              NORTHERN DISTRICT OF IOWA